UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
TIMOTHY KITTLE, SR.,

                                  Plaintiff,

      -against-

JOHN BRADY, et al.,

                                Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
23-cv-1790 (JMA) (LGD)

FILED
CLERK
8/27/2025 1:50 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Pro se Plaintiff Timothy Kittle, Sr. ("Plaintiff") filed a Second Amended Complaint (ECF No. 25, "Compl.") bringing Section 1983 and related state law claims against Suffolk County Detectives John Brady, Thomas Bosco and Michael Maresca ("Defendants") alleging multiple violations of his constitutional rights, including what can reasonably be construed as claims for unlawful search and seizure, false arrest, fabrication of evidence, unlawful strip search, coercive interrogation, and unconstitutional conditions of confinement related to a search of Plaintiff's person and his home on March 11, 2020 conducted pursuant to a court-ordered search warrant. Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (See ECF No. 40-4, "Defs.' Br.")  Plaintiff opposes this motion. (See ECF No. 40-9, "Pl.'s Opp.")  For the reasons stated below, Defendants' motion to dismiss is granted, and this case is dismissed.

**I.        BACKGROUND[1]**

This case arises from a search of Plaintiff's person and his home on March 11, 2020, conducted pursuant to a court-ordered search warrant. (Compl. ¶ 1; ECF No. 40-3)  On that day, Detective Brady obtained a search warrant from the Honorable Wiliam Condon, J.S.C., authorizing

---

[1] The facts set forth in this Opinion are drawn from Plaintiffs' Second Amended Complaint, (ECF No. 25 ("Compl.")) and the parties' submissions in connection with Defendants' motions to dismiss.

the search of Plaintiff's person and the entire premises at 58 Heathcote Road in Lindenhurst (his home).[2] (See ECF No. 40-3, "Search Warrant.") This search warrant authorized the search of Plaintiff's person and home between the hours of 6:00 am and 9:00 pm by any member of the Suffolk County Police Department, without giving notice of their authority, for the following property:

> Heroin and fentanyl; currency as proceeds of the illicit drug business, books and records reflecting transactions of the illicit drug business; cellular telephone assigned to telephone instrument number (631) 495-8340, and the data relative to illicit drug activity therein; drug paraphernalia related to the storage and distribution of heroin and fentanyl; and items constituting indicia of knowing possession, ownership or control of the premises or of the contraband including, but not limited to, bills, receipts and other personal effects indicating such ownership, knowledge or control.

(See Search Warrant at 1.) Plaintiff's Second Amended Complaint alleges that a quantity of narcotics, specifically heroin and fentanyl, and drug paraphernalia (wax bags and a scale) were recovered from Plaintiff's home and/ or person during the execution of the search warrant. (Compl. at 6.) It further appears that Plaintiff was arrested on multiple drug-related charges, at least one of which was a felony, resulting in the involvement of Child Protective Services and a restraining order being issued against him on behalf of his children. (Id. at 3, 9.)

Plaintiff alleges that on March 11, 2020, while exiting his mother's car at a 7-11 convenience store, unmarked and marked police cars arrived conducted a full search of his person. (Id. ¶ 1-6.) Detective Brady was allegedly leading the operation and conducted the search of Plaintiff. (Id.) After the search, Plaintiff was transported to his residence at 58 Heathcote Rd., Lindenhurst, NY. (Id. ¶ 7.) According to Plaintiff, the search warrant was also executed on his

---

[2] The Court takes judicial notice of this fact and the contents of the search warrant itself pursuant to Fed. R. Evid. 201. Defendants submit that it is undisputed that a search warrant was issued for Plaintiff's person and the entire premises of 58 Heathcote Road in Lindenhurst, New York where Plaintiff resided at the time. See Adeleke v. Johnson and Ripp, No. 20-CV-5224, 2022 WL 4226042, at *1 (E.D.N.Y. Sept. 13, 2022) ("A Court may take judicial notice of 'a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'")

residence on March 11, 2020. (Id. at 5.) While Plaintiff notes that "no drugs were found during the initial search," he alleges that drugs (heroin and fentanyl) and a "bag with wax bags and a scale" were ultimately recovered. (Id. at 5-6.) Plaintiff acknowledges that the crime lab's testing of the alleged drugs determine that trace amounts of heroin and fentanyl were present. (Id. at 6.) According to Plaintiff, "[t]he arrest and the search of my residence occurred simultaneously at 6:57 am, yet no evidence was found until later, suggesting a potential fabrication of evidence after the fact." (Id. at 5.) Plaintiff further alleges that Defendant Maresca directed the team to "go back in and find something" during the search at Plaintiff's residence. (Id. at 6.)

Plaintiff alleges that he was arrested and taken into custody and that he was subsequently subjected to a strip search "without proper justification" at the police station. (Id. at 7.) Plaintiff further alleges that he was "handcuffed to a table without being fed until the next morning," causing him "unnecessary discomfort and deprivation." (Id. at 7, 12.) Plaintiff also alleges that Detective Brady made "inappropriate and coercive statements" by insinuating that false admissions would lead to severe consequences regarding Plaintiff's parental rights. (Id. at 8.) After the arrest, Child Protective Services became involved, and a restraining order was issued against Defendant on behalf of his children. (Id. at 9.)

Plaintiff commenced this action on March 8, 2023. (See ECF No. 1.) Plaintiff ultimately filed the Second Amended Complaint on February 28, 2024, alleging federal and state law claims that can reasonably be interpreted as claims for unlawful search and seizure, false arrest, fabrication of evidence, unlawful strip search, coercive interrogation, and unconstitutional conditions of confinement. (See ECF No. 25, "Compl.") Defendants move to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. (See ECF No. 40-4, "Defs.' Br.")

3

## II. LEGAL STANDARDS

### A. Failure to State a Claim

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).  Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  That standard requires the Court to accept as true all well-pled factual allegations in the Second Amended Complaint and consider documents attached to that pleading, materials incorporated by reference in or integral to that pleading, and matters of which the court may take judicial notice.  See Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).  The Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements.  See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation").  Determining whether the Second Amended Complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 664.

"A pro se litigant's submissions are held to 'less stringent standards than [those] drafted by lawyers.'"  Whitfield v. O'Connell, No. 09-CV-1925, 2010 WL 1010060, at *4 (S.D.N.Y. Mar.18, 2010) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972).  Where a "plaintiff is proceeding pro se, the Court construes the complaint liberally, 'interpret[ing] it to raise the strongest arguments that it suggests.'"  Braxton v. Nichols, No. 08-CV-08568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (quoting Harris v. Westchester Cnty. Dep't of Corr., No. 06-CV-

4

201, 2008 WL 953616, at *2 (S.D.N.Y. Apr.3, 2008)). However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield, 2010 WL 1010060, at *4 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].")

### III.   DISCUSSION

#### A.   Unlawful Search and Seizure

The Fourth Amendment to the United States Constitution ensures that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S.C.A. Const. Amend. 4.  Where a search has been conducted pursuant to a court-authorized warrant, "great deference" is due to a magistrate's determination that there is probable cause to search a premises.  United States v. Leon, 468 U.S. 897, 914 (1984) (citations omitted). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)).

Deference to a judicial finding of probable cause, however, "is not boundless," Leon, 468 U.S. at 914, "and while a party challenging a warrant on the ground that it was issued on less than probable cause bears a 'heavy burden,' that burden can be met." Calderon v. City of New York, No. 14-CV-1082, 2015 WL 2079405, at *5 (S.D.N.Y. May 4, 2015) (quoting Golino, 950 F.2d at 870).  "In particular, it is appropriate to inquire whether the affidavit on which the probable cause determination was based was knowingly or recklessly false." Id.  Under Franks v. Delaware, 438

5

U.S. 154, 155-56 (1978), which applies to claims under § 1983, Calderon, 2015 WL 2079405, at *5, a "plaintiff must show that [1] the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and [2] that such statements or omissions were necessary to the finding of probable cause." Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994) (quoting Golino, 950 F.2d at 870–71, and citing Franks, 438 U.S. at 171–72)). "'Unsupported conclusory allegations of falsehood or material omission' cannot support a challenge to the validity of the warrant; rather, the plaintiff must make 'specific allegations' supported by an offer of proof." Velardi, 40 F.3d at 573. The standard under Franks is "a high one." Rivera v. U.S., 928 F.2d 592, 604 (2d Cir. 1991).

Plaintiff's unlawful search and seizure claims herein are based on only his wholly conclusory allegation that Defendants obtained the search warrant through the use of "false and deceitful information." (Compl. ¶ 3.) This conclusory allegation does not suffice to meet the Franks standard—a "high one"—and, therefore, Plaintiff's Fourth Amendment unlawful search and seizure claims fail to state a claim upon which relief can be granted and must be dismissed. See Ashcroft v. Iqbal, 556 U.S. 672, 677-78 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up). Defendants note that members of the Suffolk County Police Department searched Plaintiff's person and home on the date of the incident pursuant to a court-ordered search warrant which has been annexed to Defendant's Motion to Dismiss as Exhibit "A". (See ECF No. 40-3.) As such, these searches were legally authorized, and the presumption exists that it was objectively reasonable for the officers to believe that there was, in fact, probable cause to search Plaintiff and his home. Plaintiff offers no factual basis to rebut this presumption. Thus, these unlawful search claims cannot survive. Based on the foregoing, Plaintiff's unlawful search claims must be dismissed.

### B. False Arrest and Fabrication of Evidence

To plead a cause of action for false arrest under New York law, a plaintiff must plausibly allege that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotation marks omitted). The same elements govern a federal false arrest claim as in analyzing § 1983 claims for unconstitutional false arrest, courts generally look to the law of the state in which the arrest occurred. Jaegly v. Couch, 439 F.3d 149, 151–52 (2d Cir. 2006). Thus, the elements of a false arrest claim under §1983 have been held to be "substantially the same" as the elements of a false arrest claim under New York law. Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992).

Plaintiff does not adequately plead the elements of a false arrest claim against any of the named defendants. Instead, Plaintiff based this claim on the conclusory allegation that "[f]abricated evidence led to an unlawful arrest, as the police failed to find any substance during the search." (Compl. ¶ 9.) Yet Plaintiff also acknowledges that substances were found at the scene that later tested positive for heroin and fentanyl. (Id. at 6.) Plaintiff also notes that a bag with wax bags and a scale "mysteriously appeared" outside the door of his residence. (Id.) "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.'" Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). Here, Plaintiff's own complaint concedes that illegal drugs were found at the time of his arrest, and Plaintiff's conclusory allegations regarding the fabrication of such evidence are insufficient to establish a fabrication of evidence claim or defeat a finding of probable cause for the arrest.

"[T]o establish a [S]ection 1983 fair-trial claim based on fabrication of evidence, a plaintiff must demonstrate that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'" Smalls v. Collins, 10 F.4th 117, 132 (2d Cir. 2021) (quoting Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016)); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997). The elements of a Section 1983 conspiracy are: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Plaintiff's allegations of fabrication are too conclusory to survive dismissal. Plaintiff alleges only that detectives "engaged in tampering with evidence, planting evidence, and committing perjury." (Compl. ¶ 10.) Plaintiff further alleges that it was "falsely stated" on the felony complaint that "drugs were found on my person at my residence." (Id. ¶ 11.) Courts frequently dismiss similarly conclusory allegations. See, e.g., Hutchins v. Solomon, No. 16-CV-10029, 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) (collecting cases). Accordingly, any claim pertaining to fabrication of evidence is dismissed.

With regards to Plaintiff's false arrest claim, it is also unclear which of the Defendants "confined" (i.e., arrested) him for purposes of such a claim. Further, based on the existence of the search warrant, Plaintiff fails to establish that his confinement during the search was not otherwise privileged as the fourth element requires. It is well-established that officers may briefly detain occupants of a home during a lawful search of the premises. Michigan v. Summers, 452 U.S. 692, 705 (1981). As such, Plaintiff's confinement during the course of the search warrant execution, if any, was "otherwise privileged." Based on the foregoing, Plaintiff's false arrest claim is dismissed.

8

C. **Strip Search**

To the extent the Second Amended Complaint attempts to bring a claim based on the alleged strip search of Plaintiff at the police precinct, the Court concludes that Plaintiff has not asserted a viable claim. The reasonableness of a strip search "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Holland v. City of New York, 197 F. Supp. 3d 529, 542–43 (S.D.N.Y. 2016) (cleaned up). A strip search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." Jean–Laurent v. Wilkerson, 438 F.Supp.2d 318, 323 (S.D.N.Y. 2006). In the context of a strip/cavity search, a plaintiff may make out a claim of excessive force under the Fourth Amendment if a police officer engages in "sexual misconduct" or if it is unrelated to any legitimate penological goal. See Santiago v. City of Yonkers, No. 13-CV-1077, 2015 WL 6914799, at *6 (S.D.N.Y. Oct. 30, 2015); see also Granger v. Santiago, No. 19-CV-60, 2019 WL 1644237, at *7 (D. Conn. Apr. 16, 2019) (permitting excessive force claim to proceed where the defendant "conducted the manual body cavity search for the purpose of humiliating [the defendant] rather than for a legitimate penological purpose").

Here, the allegations in Plaintiff's complaint regarding a strip search do not establish a viable claim. There is no allegation that the search was performed for the purpose of humiliating Plaintiff or providing sexual gratification to the officers. To the contrary, the complaint notes that drugs were found during the earlier search that day, (Compl. at 6), and a search warrant had been issued authorizing the search of Plaintiff's person and residence for drugs and drug proceeds. (See Search Warrant at 1.) Plaintiff also has not alleged any other facts that would support a claim of an unlawful search or the use of excessive force. Accordingly, the Court does not find that Plaintiff

has alleged a viable claim based on the alleged strip search, and to the extent such a claim is asserted in the Complaint, it is dismissed. See Tisdale v. Hartley, 442 F. Supp. 3d 569, 575–76 (W.D.N.Y. 2020).

**D.     Coercive Interrogation**

To the extent Plaintiff's complaint raises a Fifth Amendment claim based on his assertions that officers questioned him without reading his rights and that Detective Brady made inappropriate and coercive statements during an interrogation, this claim fails.  Plaintiff alleges that he was questioned without being read his Miranda rights and that "during an interrogation conducted by Detective Brady, [he] faced coercion and threats aimed at securing a confession." (Compl. at 2, 9.)  Plaintiff alleges that this was done by "insinuating that false admissions would lead to severe consequences regarding [his] parental rights." (Id. at 9.)

Plaintiff does not sufficiently allege a Fifth Amendment claim.  He does not allege that he made any statements to Defendants during this alleged interrogation that were used against him in a subsequent criminal trial.  Thus, Plaintiff has failed to state a claim of a violation of his rights under the Fifth Amendment. See, e.g., Chavez v. Martinez, 538 U.S. 760, 766–767 (2003) ("mere coercion [to self-incriminate] does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case").  Furthermore, the appropriate remedy for a Fifth Amendment claim alleging that a police officer interrogated a defendant after he had invoked his right to counsel under Miranda v. Arizona, 384 U.S. 436, 473-744 (1966) is the exclusion of the evidence following a suppression hearing, not a cause of action for damages under Section 1983. See, e.g., Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 350 (2d Cir. 1998) ("any claim that a statement was unconstitutionally taken in the absence of counsel is properly remedied by suppression following a Huntley hearing"); Neighbour v. Covert, 68 F.3d 1508, 1510–11 (2d Cir. 1995) (per curiam) ("The remedy for a Miranda violation is the exclusion from evidence of any

10

ensuing self-incriminating statements."); London v. Nassau Cty. Dist. Attorney's Off., No. 20-CV-3988, 2020 WL 7699644, at *5–6 (E.D.N.Y. Dec. 28, 2020) ("Similarly, the questioning of Plaintiff after he allegedly requested counsel does not give rise to a plausible Section 1983 claim."). Thus, any claim that Defendants violated Plaintiff's Fifth Amendment rights is not plausible.

### E.   **Conditions of Confinement**

Plaintiff alleges that he was "handcuffed to a table without being fed until the next morning," causing him "unnecessary discomfort and deprivation." (Id. at 7, 12.) To the extent that this can be construed as a Fourteenth Amendment conditions of confinement claim, the Court finds that Plaintiff has not plausibly alleged such a claim.

To prevail on an unconstitutional conditions of confinement claim, a pretrial detainee must satisfy two prongs: "(1) an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process; and (2) a 'mens rea prong' that shows that the officer acted with at least deliberate indifference to the challenged conditions." House v. City of New York, No. 18-CV-6693, 2020 WL 6891830, at *11 (S.D.N.Y. Nov. 24, 2020) (cleaned up). In order to meet the objective prong, a plaintiff must show "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [his] health." Moore v. Cnty. of Nassau, No. 18-CV-4786, 2023 WL 2477631, at *4 (E.D.N.Y. Mar. 13, 2023) (citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017)). While there is no static test to determine whether an objective deprivation was sufficiently serious, courts look to "contemporary standards of decency." Darnell, 849 F.3d at 30. Many courts have held that "unpleasant or unsanitary conditions only rise to the level of a Constitutional violation if they amount to an objectively and sufficiently serious denial of the minimal civilized measure of life's necessities." Flores v. City of New York, No. 21-CV-1680, 2022 WL 4705949, at *14 (S.D.N.Y. Aug. 8, 2022),

report and recommendation adopted, No. 21-CV-1680, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022).

Plaintiff's single-sentence allegation regarding his overnight confinement does not rise to the level of a constitutional violation. Plaintiff does not provide any context or facts to suggest that the confinement posed an unreasonable risk of serious damage to his health. The alleged overnight confinement without access to food does not rise to the level of a deprivation of constitutional rights, even if Plaintiff was forced to miss a meal, because there is no allegation that Plaintiff's health was at risk. See Flores, 2022 WL 4705949, at *15 (finding plaintiff's allegation that he was forced to sit among sewage and toilet water that flooded his cell for a day not enough to constitute a constitutional violation because plaintiff did not allege he suffered sickness or ill effects resulting from such exposure); Mejia v. Carter, No. 121-CV-09049, 2022 WL 17653826, at *5 (S.D.N.Y. Nov. 2, 2022), report and recommendation adopted, No. 21-CV-9049, 2022 WL 17624254 (S.D.N.Y. Dec. 13, 2022) (holding that the deprivation of food and water for a seven to eight-hour period does not rise to the level of a constitutional violation); Daniels v. Carter, No. 21-CV-8985, 2022 WL 17979915, at *9 (S.D.N.Y. Nov. 22, 2022), report and recommendation adopted, No. 21-CV-8985, 2022 WL 17978908 (S.D.N.Y. Dec. 28, 2022) (finding that an eight-hour deprivation of food and water was objectively not sufficiently serious to give rise to a constitutional violation as a matter of law); Genao v. City of New York, No. 21-CV-00303, 2023 WL 4633486 (S.D.N.Y. June 20, 2023), report and recommendation adopted, No. 21-CV-303, 2023 WL 4625522, at *14 (S.D.N.Y. July 19, 2023) (finding Plaintiff's allegations that he was denied access to his property, linens and blankets for one night, and breakfast to be insufficient to sustain a conditions of confinement claim). Therefore, Plaintiff has not satisfied the objective prong of his conditions of confinement claim, and this claim is dismissed.

**F.     Plaintiff's Purported State Law Claims Are Barred By Plaintiff's Failure to File a Notice of Claim**

To the extent that the Second Amended Complaint purports to set forth any supplemental state law claims, they are barred by Plaintiff's failure to comply with the statutory conditions precedent to commencement of an action against municipal defendants as set forth in the New York General Municipal Law. The notice of claim is the central and absolute condition precedent to suit established by the N.Y. General Municipal Law. N.Y. Gen. Mun. Law § 50-e(a) provides:

> (a) In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises . . .

N.Y. Gen. Mun. Law § 50-e(a).

The notice of claim requirements of the N.Y. Gen. Mun. Law § 50-e et seq. apply to state law claims brought in the federal courts to the same degree and in the same manner they apply to claims brought in state court. Chapman v. City of New York, No. 06-CV-3153, 2011 WL 1240001, at *13 (E.D.N.Y. Mar. 30, 2011) ("State notice of claim requirements . . . are substantive law that must be applied by federal courts in deciding pendent state and local law claims."); Dingle v. City of New York, 728 F. Supp. 2d 332, 348–349 (S.D.N.Y. 2010) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim."); Brennan v. Albany Cty., No. 00-CV-01985, 2005 WL 2437026, at *6 (N.D.N.Y. Sept. 30, 2005) (citing Jones v. Stancik, No. 02-CV-4541, 2004 WL 2287779 (E.D.N.Y. Oct. 4, 2004) ("Where state law specifies a particular notice of claim procedure, federal courts are not free to substitute another procedure.") In the instant case, Plaintiff failed to file a notice of claim. As such, any purported state law claims must be dismissed.

13

G.    **Plaintiff Fails to Plead a Monell Claim Against Suffolk County**

To the extent the Second Amended Complaint attempts to allege a claim for municipal liability against Suffolk County under § 1983, this claim must also be dismissed because Plaintiff has failed to plead an underlying constitutional violation and because the complaint cannot be reasonably be interpreted to include allegations concerning a Suffolk County municipal policy or custom which deprived him of these rights.[3] It is well settled that to prevail on a claim against a municipal defendant, a plaintiff must as a prerequisite establish an underlying constitutional violation on the part of individual municipal actors. If the plaintiff has not suffered a constitutional violation there can be no liability against the municipality. Monell v. Depart. of Soc. Serv. of the City of New York, 436 U.S. 658 (1978); Collins v. City of Harker Heights, 503 U.S. 115 (1992); City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 132 (2d Cir.1997). It is equally settled that in order to recover against a government entity pursuant to §1983, a plaintiff must demonstrate facts that one of its customs and/or policies caused the subject constitutional violation. Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

Plaintiff's Second Amended Complaint cannot reasonably be interpreted to include allegations concerning a Suffolk County municipal policy or custom which deprived Plaintiff of his constitutional rights. Absent are any facts sufficient to establish that a custom and/or policy of the County caused a violation of his constitutional rights. Thus, any alleged Monell claim against the County is dismissed.

---

[3] As noted in the Court's January 19, 2024 Order, "it is well settled in this district that, 'under New York law, departments that are merely administrative arms of a municipality,' such as the Suffolk County Police Department, 'do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.'" Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department). As such, Plaintiff's claims against the Suffolk County Police Department are also dismissed with prejudice.

14

### H. Leave to Re-Plead

The Court has considered whether Plaintiff should be given an opportunity to amend his complaint further and finds that any such amendment would be futile. The Second Circuit has instructed that courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citation omitted). However, a court may decline an opportunity to re-plead "when amendment would be futile." Tocker v. Philip Morris Cos., Inc., 470 F.3d 481, 491 (2d Cir. 2006) (citing Ellis v. Chao, 336 F.3d 114, 127 (2d Cir.2003)).

Here, the Court finds that amendment would be futile, because the deficiencies in Plaintiff's complaint are not the result of "inadequate[ ] or inartful [ ]" pleading, and are not susceptible to cure. See Cuoco, 222 F.3d at 112. Plaintiff has already been given leave to amend twice, failing to cure the referenced defects in doing so. This failure is further evidence of the fact that they cannot be cured. The problem here "is substantive; better pleading will not cure it." Id. Accordingly, dismissal will be without leave to re-plead.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and this action is DISMISSED. The Clerk is directed to enter judgment dismissing Plaintiff's Second Amended Complaint with prejudice and is respectfully directed to mail a copy of this Order to pro se Plaintiff at his address of record.

**SO ORDERED.**

Dated: August 27, 2025
       Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE